HARDY, Judge.
This is a mandamus proceeding in which relator seeks to compel the renewal of his license to practice optometry in the State of Louisiana. From a judgment rejecting relator’s demands he has appealed.
The facts are uncontested and with one exception have been covered by stipulation of counsel. Relator, Dr. Nathan J. Rogers, was a licensed practitioner of optometry in the State of Louisiana for several years prior to and including the year 1954 and he made timely application for a renewal of his license for the year 1955, which application was refused by the respondent Board. The refusal was based upon a so-called regulation included in a resolution adopted by the Louisiana State Board of Optometry Examiners under date of February 27, 1955, the pertinent part of which resolution, applicable to the case at hand, reads as follows:
“Section 2. Be it further resolved that no license will be renewed unless holder of such license is a bona fide resident and actually and individually engaged in the practice of Optometry in Louisiana.”
By letter dated April 13, 1955, relator was advised:
“The Louisiana State Board of Optometry Examiners have unanimously agreed to refuse renewal of any license to practice optometry in Louisiana unless such person applying for renewal is a bona fide resident of Louisiana and actually and individually practicing optometry in Louisiana under the provisions as set forth in the Louisiana Optometry Act.
“I am therefore, returning the fee for the renewal of your license for the year 1955.”
Respondents first filed an exception of no right and no cause of action, which was referred to the merits. The exception has not been urged before this court and therefore is considered to have been abandoned.
Relator filed an amended petition joining the five individual members of the Board of Optometry Examiners as parties defendant. Respondents filed answer to plaintiff’s petition, categorically denying the allegations thereof, and, in further answer, set up the resolution of the Board, averring that it was adopted under the authority of LSA-R.S. 37:1048, and, further, that the rule was reasonable and necessary for the administration and regulation of the provisions of the statute.
On trial the only testimony was that of Dr. Lacy G. Bordelon, called as a wit *514 ness for respondents. Dr. Bordelon was a member of the Board and was present at the time of the adoption of the resolution of February 27, 1955. The purpose of the testimony of this witness was intended to establish the necessity for the adoption of the resolution in question, and Dr. Bordelon testified that the resolution was designed to permit the control of unethical practices, specifically the advertising of business enterprises allegedly practicing optometry and the lending of the name of licensed practitioners to other persons representing themselves to the public as qualified optometrists.
In support of his demands relator relies upon the contention that respondent Board exceeded its authority in adopting the resolution of Feburary 27, 1955, the effect of which was to impose additional qualifications upon applicants for license, above and beyond the requirements fixed by statute. Specifically it is urged that the statute does not require an applicant for license to be (1) a bona fide resident of the State of Louisiana, or (2) to be actually and individually engaged in the practice of Optometry within the State of Louisiana.
Respondents insist that the resolution constituted the regulation of administrative functions within the province of the Board under specific legislative authority.
The practice of Optometry is regulated in the State of Louisiana under the provisions of LSA-R.S. 37:1041 et seq. Among other provisions the statute creates the Louisiana State Board of Optometry Examiners (Section 1042), fixes the powers thereof (Section 1048), and establishes the qualifications and requirements of applicants for license (Section 1049).
The particular statutory authority upon which respondents rely, as set forth in Section 1048, authorizes the Board to:
“Promulgate and publish rules and regulations for the purpose of administering the provisions of this Chapter.”
It is the contention of respondents that the resolution, requiring residence in the State of Louisiana and the actual and individual practice of Optometry within the State, constitutes a simple administrative provision which the Board was specifically empowered to adopt under the above quoted statutory provision.
The opposed contentions necessitate a determination as to whether the regulation constitutes a regulatory provision falling under the jurisdiction and power of the Board, or, in effect, results in an addition or extension of the statutory qualifications for applicants. In other words, if the resolution of the Board is purely administrative in purpose and effect, relator’s action must fail; but, if the regulation adds to or extends the statutory qualifications, then it is clearly ultra vires, and relator is entitled to the relief sought.
The qualifications and requirements of applicants for a license to practice Optometry are set forth in Section 1049 as follows :
“All persons desiring to practice optometry shall:
“(1) Be citizens of the United States, of good moral character;
“(2) Have graduated from an approved high school or school maintaining a similar standard;
“(3) Have graduated from a school or college of optometry approved by the board;
“(4) File with the secretary of the board upon the form furnished an application under oath stating that he fulfills each requirement of this Section and include with the application the papers required by R.S. 37:1050; and
“(5) Pass the examination required by R.S. 37:1051.”
Admittedly, relator possesses all of the above specified qualifications, notwithstand *515 ing which the respondent Board refused to renew his license on the grounds that he is not a bona fide resident of the State of Louisiana, in conformity with the requirement of such residence which was established by the Board through adoption of the resolution of February 27, 1955.
Regardless of the purpose of the resolution we think it is obvious that the effect thereof was to add a requirement not fixed and not contemplated by the statute. It requires no citation of authority to sustain the simple, logical and inescapable conclusion that the action of the Board in this respect was ultra vires, and, accordingly, unlawful.
The second point is equally susceptible of easy resolution. There is nothing in the statutorily provided qualifications and requirements which necessitates any showing by an applicant for license that he be “actively and individually engaged in the practice of optometry in Louisiana.” It follows that this so-called administrative provision by the Board represents an additional qualification not required by the statute, and it, too, must be held ultra vires and unlawful.
Inasmuch as the conclusions above set forth serve to dispose of the issues presented, there would ordinarily be no need for further discussion. However, we think it within our province to observe that this matter involves the general welfare and concerns an essential regulation of the practice of a profession affecting the health and well-being of the people of the State. For this reason we deem it highly desirable, if not absolutely necessary, to amplify this opinion by giving some consideration to its effect.
It is clear that the purposes of the members of respondent Board in the adoption of the controverted resolution were well intentioned and desirable in the interest of protecting the general public from obvious abuses connected with the practice of optometry. However, our consideration of the statutory provisions serves to convince us that the effect of this decision does not open the door to abuses and malpractices, nor does it leave respondent Board without the power of adequate regulation of the practice of Optometry and the control of such practices.
The testimony of Dr. Bordelon clearly delineates some of the unethical and dangerous practices which the Board sought to control, but we are convinced that the statute itself provides the authority for and the means by which such abuses may be eliminated. LSA-R.S. 37 ¡1061 provides that the Board may refuse to issue or renew or may suspend or revoke any certificate for any of a number of causes that are specifically listed, among which, we note the following:
“(10) Employing directly or indirectly any unlicensed persons or suspended optometrists to practice optometry;
“(11) Advertising, in untruthful, improbable, impossible, or misleading statements with reference to the practice of optometry.
* * * * * *
“(13) Permitting another to use his certificate of registration;
“(14) Advertising any price, credit, terms, or agreement with reference to the practice of optometry.”
One or more of the above quoted provisions would be appropriate to the instances of unethical conduct and abuses to which attention was called in the testimony of Dr. Bordelon. It is, therefore, apparent that the effect of this judgment does not leave the respondent Board without authority or power to enforce the statutory requirements.
It should be unnecessary to observe that a license to practice any statutorily regulated profession such as law, architecture, medicine, optometry, etc., is purely personal, to be used and exercised *516 only by the individual licensee and not to be bartered, exchanged or transferred.
However, under the facts of the instant case, plaintiff is entitled to the relief for which he prays, and, accordingly, the judgment appealed from is annulled, set aside and reversed and
It is ordered, adjudged and decreed that the alternative writs of mandamus first issued herein be, and they are, made peremptory, and, accordingly, the Louisiana State Board of Optometry Examiners be, and it is, directed and commanded to issue to petitioner a renewal of his license to practice optometry in the State of Louisiana.
Respondents, constituting members of a State agency, are exempt from, and, therefore, are relieved of the necessity for payment of costs.